UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**BRENDA W.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-00803-TPK

OPINION AND ORDER

## OPINION AND ORDER

    This case is before the Court for the third time to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for a closed period of social security disability benefits. On March 5, 2019, the Court resolved Case No. 1:18-cv-00590 by ordering a remand for further proceedings, something that the parties had stipulated to. The Commissioner again denied benefits, Plaintiff again appealed, and in an order dated April 26, 2021 filed in Case No. 1:20-cv-00657, the Court issued its second remand. Following that remand, an Administrative Law Judge issued an unfavorable decision on June 27, 2022, which constituted the Commissioner's final decision. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 9) and the Commissioner filed a similar motion (Doc. 12). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the defendant Commissioner.

### I.  BACKGROUND

    Plaintiff applied for social security disability benefits on November 3, 2014, alleging that she became disabled on July 3, 2012. After initial administrative denials of her claim, Plaintiff appeared at a hearing before an Administrative Law on November 21, 2016. The ALJ issued a decision on April 5, 2017, finding that Plaintiff became disabled, and was entitled to benefits, as of January 25, 2017, but not before. After the Court remanded the case in 2019, a second administrative hearing was held on December 18, 2019, following which an unfavorable decision was issued on February 3, 2020. The second remand followed, and a third administrative hearing was held on February 3, 2022, followed by another unfavorable decision dated June 27, 2022. Plaintiff, a medical expert, and a vocational expert all testified at the most recent hearing.

    In the ALJ's June 27, 2022 decision, he found, first, that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017, and that she did not

engaged in substantial gainful activity during the period in question.  Next, he determined that she suffered from severe impairments including obesity, lower extremity edema, degenerative disc disease of the cervical, thoracic, and lumbar spine, and multiple sclerosis.  He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff could perform sedentary work up through January 25, 2017.  However, she had to elevate her legs up to 90 degrees for 50% of the time while seated and had to be able to alternate between sitting and standing every hour without being off task.  Further, she could climb ramps and stairs only occasionally, could frequently stoop, balance, and crouch, could never crawl, could not climb ropes, ladders, or scaffolds, and could not work at unprotected heights.

The ALJ found that with these limitations, Plaintiff could not do her past relevant work as tractor-trailer truck driver, a contact representative, or a credit and loan collection supervisor.  However, based on the vocational testimony, he determined that she could perform sedentary jobs such as addresser, document preparer, or charge account clerk.  He also found that these jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time between her alleged onset date and January 25, 2017.

In her motion for judgment on the pleadings, Plaintiff raises a single issue, stated as follows:

> The ALJ assessed a highly specific RFC that was not based on substantial evidence or tethered to the record.

Plaintiff's memorandum, Doc. 9-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

At the first administrative hearing, held in 2016, Plaintiff testified that she saw a number of different doctors for different issues, including problems with her memory and pain in her back and legs.  She said her neck and back pain had increased since she was involved in a motor vehicle accident three years before.  She had also enrolled in school while working full-time but the program took her much longer to complete than expected due to her pain causing problems with concentration.  She stopped working at a collection agency due to the mental demands of the work, including stress, and also because of some of the physical demands of the job.

Plaintiff was next asked whether she could do a job that provided a sit/stand option and allowed for changing positions as well.  She said that when sitting, she had to elevate her legs to relieve back pain and swelling, something she did when attending classes.  She also needed to

get up and move around every five to ten minutes. Plaintiff had been caring for her mother as well, mainly giving her reminders and taking her laundry home. At her own house, she had to stop doing lawn care and snow removal after the accident, and she noticed that her walking was more limited. She also referred to having been diagnosed with multiple sclerosis and said that it was causing more memory problems since the car accident.

The second hearing was held in 2019. There, Plaintiff said that during the relevant time period, she had back and leg pain and could sit for only 20 minutes at a time. Moving around or standing up helped alleviate the pain. She had balance issues when walking and also was restricted in her lifting ability. She could climb stairs, but slowly, and said that she needed to elevate her legs every night to reduce swelling, and also that she would keep them slightly elevated at work. Plaintiff also said she had "brain fog" during that time and needed memory prompts, and that she also noticed that stress seemed to aggravate her MS. Household chores, including cooking, laundry, cleaning, and doing dishes were all very difficult for her to do.

At the third hearing, held in 2022, Plaintiff, a medical expert, and a vocational expert all testified. Plaintiff repeated her testimony about having swelling in her legs during the relevant time period and keeping them elevated as well as using compression wraps. She also said she had done physical therapy but, if anything, it made her back worse. She further testified that she used a cane for stability when walking.

The medical expert, Dr. Gaeta, said that Plaintiff's severe impairments included multiple sclerosis and morbid obesity. He thought she was doing well with her MS. Dr. Gaeta noted that Plaintiff did develop some back problems after the 2014 motor vehicle accident that also radiated into her right leg. She also had swelling in her legs on and off which was addressed by elevating her legs as much as possible. He said that any psychological issues were beyond his area of expertise. When further questioned about Plaintiff's need to elevate her legs, Dr. Gaeta said that it would be wise for her to wear support stockings, lose weight, use diuretics, and elevate her legs "whenever she can." (Tr. 1383). That would included during a working day, although he said that was not specifically necessary, and he finally described her need as elevating her legs for "[p]art of the day as possible." (Tr. 1384). However, he did not think she would suffer medically if she were not able to do so. Further addressing Plaintiff's functional capacity, Dr. Gaeta said she could lift 20 pounds, sit for six hours, stand and walk for four hours, occasionally climb stairs, occasionally stoop, frequently balance and bend, never crawl, frequently crouch, and avoid unprotected heights. The questioning then returned to the need for Plaintiff to elevate her legs, and after some prolonged discussion, Dr. Gaeta said that if Plaintiff were his patient he would advise her to do so 50% of the time if her edema were present. (Tr. 1396).

The final witness was the vocational expert, Ms. Vasishth. She agreed with prior vocational testimony that Plaintiff had worked as a truck driver, but said that her other job, which Plaintiff was asked to describe in more detail, was properly classified as a collection supervisor. Ms. Vasishth was then asked how needing to elevate one's legs for 50% of the day would impact sedentary work, and she said that if one did not deal directly with the public in person, it would have no impact. Next, the ALJ described a person who was limited to sedentary

work with certain postural limitations, who needed to alternate between sitting and standing once an hour, and who had to keep her legs elevated for 50% of the time. He asked if that person could do Plaintiff's past work, and the answer was no. However, Ms. Vasishth said such a person could do jobs like addressing clerk, document preparer, or charge account clerk, and she gave numbers for those jobs as they existed in the national economy. She further testified that employers would tolerate an employee taking a stretch break every 20 minutes, and also that the essential functions of each of those three jobs could be done while sitting or standing. Lastly, she said that being off task more than 10% of the time or being absent from work more than one day per month would not be tolerated, and that the jobs in question did not involve contact with the public or more than routine, repetitive tasks with no production quotas.

### B. Medical Evidence

Plaintiff's argument in this case does not focus on what is in the medical record, but on what is not there, as the Court will explain more fully below. Plaintiff has accurately summarized the treatment records in her memorandum, and the Court will not review them in any detail in this Opinion and Order.

### C. Opinion Evidence

The primary opinion evidence in this case is Dr. Gaeta's testimony, which is described above. Other evidence includes a 2015 report from Dr. Miller, whose opinion as to Plaintiff's ability to climb stairs, work at unprotected heights, bend, lift, and carry was given significant weight, at least to the extent that it appeared to be consistent with a limitation to sedentary work, and an opinion from Dr. Patel stating that, at least at one point in 2016, Plaintiff was temporarily totally disabled. The ALJ gave that opinion little weight. There were also some opinions about Plaintiff's psychological functioning, but they are not relevant to the issue which Plaintiff has presented for decision.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112

(quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

Plaintiff has raised just a single issue in her memorandum, and it concerns only a handful of conclusions reached by the ALJ about Plaintiff's residual functional capacity. As noted above, in addition to limiting Plaintiff to sedentary work with some postural and environmental restrictions, the ALJ determined that Plaintiff needed to elevate her legs for 50% of the workday and that she needed to be able to alternate between sitting and standing every hour without being off task. Plaintiff contends that neither of these two very specific limitations are referenced in any of the medical opinions and that the ALJ had no sound basis for imposing them. The Commissioner, in turn, points to portions of the testimony and other evidence in arguing that the ALJ's conclusions enjoyed substantial support in the record and that they were not the product of an impermissible lay interpretation of the raw medical data. For the reasons set forth below, the Court finds the Commissioner's argument to be the more persuasive.

It is true, as Plaintiff argues, that there are limits to an ALJ's ability to craft specific parts of a residual functional capacity finding when there is no direct support for those parts in the medical evidence. At the same time, however, deviating from the expert medical testimony concerning a claimant's functional capacity is not always error. This Court has described the law in this area this way:

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019). As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. § 404.1545; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions

affords an adequate basis for meaningful judicial review, applies the proper legal
standards, and is supported by substantial evidence").

*Lee C. v. Comm'r of Soc. Sec.*, 2024 WL 217582, at *3 (W.D.N.Y. Jan. 19, 2024).

Turning first to the requirement that Plaintiff had to elevate her feet 50% of the time, the Court has summarized the testimony on this subject given at the administrative hearing by Dr. Gaeta. As noted, the ALJ directed a fair number of questions to Dr. Gaeta about this issue. Fairly read, Dr. Gaeta's testimony was that, for the most part, there was not an actual medical necessity for Plaintiff to elevate her legs, but if she were his patient, he would recommend, based on her occasional edema, that she do so 50% of the time. Plaintiff also testified that she would keep her legs elevated when sitting either at work or in the classroom and that this helped with the swelling. The ALJ was entitled to (and did) consider all of this testimony, and he synthesized it by concluding that, for simplicity's sake, a 50% restriction made the most sense. The Court concludes that the record as a whole supports the ALJ's decision that Plaintiff was able to sit for prolonged periods if she had the ability to elevate her legs half of the time.

As to the determination that Plaintiff needed some variation of a sit/stand option, this Court has addressed that issue in a very similar case. On facts that are essentially the same as those present here, the Court said:

> In this case, neither Dr. Ghazi nor consultative examiner Dr. Samuel Balderman opined that Plaintiff required a sit/stand option. Dr. Balderman did not assess any limitations in sitting or standing (Dkt. 6 at 487-88), while Dr. Ghazi opined that Plaintiff was capable of sitting for six hours in an eight-hour workday without restriction, and was capable of standing for four hours with only normal breaks (id. at 67). However, Plaintiff testified at the hearing she can sit for "15, 20 minutes" before experiencing pain. (Id. at 54). She would then need to stand and stretch before sitting again. (Id.). Plaintiff further testified that she could stand for 10 to 15 minutes, and by 25 minutes, her feet would be numb. (Id.). The ALJ explained that he weighed Plaintiff's subjective complaints against the medical assessments that noted her normal strength, reports of alleviated pain, and normal gait. (See id. at 20). The Court cannot conclude that the ALJ's resolution of these conflicting aspects of the record was outside his discretion. *See Mary Diane K. v. Comm'r of Soc. Sec.,* 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021) ("It was further not erroneous for the ALJ to partially credit Plaintiff's testimony regarding her own limitations and assess more restrictive manipulative and environmental limitations than those identified by the consultative examiners.").

*Jessica Lynn J. v. Comm'r of Soc. Sec.*, 645 F. Supp. 3d 128, 136 (W.D.N.Y. 2022). Here, too, the ALJ resolved a conflict between the functional capacity expressed by Dr. Gaeta and Plaintiff's subjective testimony as to her sitting limitations and what she needed to do to alleviate her discomfort. He particularly noted that he had imposed these and other limitations based in part on "her reports of physical limitations due to increased fatigue, having sharp pain in her

back, relapsing and remitting multiple sclerosis, and lower leg edema." (Tr 1353). Again, the record as a whole supported this resolution, and it was therefore within the ALJ's purview to make.

Plaintiff has raised a third issue concerning the ALJ's reliance on the testimony of the vocational expert to the effect that leg elevation did not preclude the performance of the sedentary jobs she identified. Plaintiff's argument here is simply that she submitted evidence from a different vocational expert which disputed this testimony. Plaintiff has not explained, however, why the ALJ had to give greater weight to this expert's view or why the ALJ was not entitled to resolve the conflict in favor of the testimony given at the hearing. As the Court of Appeals has observed, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). This contention lacks merit as well. Consequently, the Court finds no error here requiring reversal or remand.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 9), **GRANTS** the Commissioner's motion (Doc. 12), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

                                          **/s/ Terence P. Kemp**
                                          **United States Magistrate Judge**